Ryan A. Hamilton
CA Bar No. 291349
HAMILTON LAW
5125 S. Durango Dr., Ste. C
Las Vegas, NV 89113
(702) 818-1818
(702) 974-1139 (fax)
ryan@hamiltonlawlasvegas.com

*Attorney for the plaintiffs,*
*Christy Estrada and Branden Chavez*

**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHRISTY ESTRADA, a New Mexico Citizen; and BRANDEN CHAVEZ, a New Mexico Citizen, <br><br> Plaintiffs, <br><br> vs. <br><br> NARCONON FRESH START d/b/a SUNSHINE SUMMIT LODGE; ASSOCIATION FOR BETTER LIVING AND EDUCATION INTERNATIONAL; NARCONON INTERNATIONAL and DOES 1-100, ROE Corporations I – X, inclusive, <br><br> Defendants. | Case No. 3:14-cv-00586-LAB-KSC <br><br> **THIRD AMENDED COMPLAINT AND JURY DEMAND** |

Plaintiffs Christy Estrada and Branden Chavez ("Plaintiffs"), by and through counsel, Ryan Hamilton of Hamilton Law, LLC, allege the following:

**I.**

**PARTIES**

1. Plaintiffs Christy Estrada and Branden Chavez were, and at all relevant times to this Complaint are, citizens of New Mexico.

1

2.      Defendant Narconon Fresh Start (hereafter "Fresh Start"), is, and at all times relevant to this Complaint was, a corporation incorporated under the laws of, and with its principal place of business in, the State of California. Fresh Start has been at all relevant times transacting business in Warner Springs, San Diego County, California. Fresh Start may be served with process through its registered agent, Mark Kirwin, 4480 Market St., Ste. 804, Ventura, CA 93003.

3.      Defendant Narconon International ("NI") is a California corporation with its headquarters in Los Angeles, California.

4.      NI is the parent/licensor of Defendant Narconon Fresh Start. NI exercises control over the time, manner, and method of Fresh Start's operations.

5.      NI was doing business in the State of California by and through its agent and subsidiary/licensee Defendant Narconon Fresh Start. NI may be served with process through its registered agent, Sherman D. Lenske, 6400 Canoga Ave., Suite 315, Woodland Hills, CA 91367.

6.      Fresh Start and NI are subsidiaries of the Association for Better Living and Education ("ABLE"). ABLE oversees the drug rehabilitation, education, and criminal justice activities of the Church of Scientology including, but not limited to, Fresh Start and NI.

7.      Defendant ABLE is a corporation registered in the State of California with its headquarters in Los Angeles, California.

8.      ABLE controls the time, manner, and method of NI's and Fresh Start's businesses by actively managing their daily operations, including conducting inspections of Narconon centers and creating, licensing, and approving their marketing materials.

9.      ABLE transacts business in the State of California by and through its agents, Narconon International and Narconon Fresh Start. ABLE may be served with process through its registered agent, Sherman D. Lenske, 6400 Canoga Ave., Suite 315, Woodland Hills, CA 91367.

10.     Plaintiff is unaware of the true names and capacities, whether individual, corporate, associate, or otherwise, of Defendant DOES 1-100, inclusive, and, therefore, sues these

Defendants by fictitious names. Plaintiffs will seek leave of this Court to amend this Complaint when the identities of these Defendants are ascertained.

## II.

## JURISDICTION AND VENUE

11. This Court has subject jurisdiction pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds $75,000.00, and there is complete diversity between the parties.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial portion of the events and omissions giving rise to this lawsuit occurred in this District, and the Court has personal jurisdiction over each of the parties as alleged throughout this Complaint.

## III.

## FACTUAL ALLEGATIONS

13. On or about June 5, 2012, Christy Estrada was searching the Internet for help in finding an appropriate drug rehabilitation facility for her 19-year-old son, Branden Chavez, who was struggling with heroin addiction. Christy found a website that purported to provide help in finding an appropriate drug rehabilitation facility.

14. Christy input information about her situation into the website's prompts. Shortly thereafter a representative named Ryan contacted her from the phone number 1-866-635-7437. Ryan recommended that Christy send Branden to "Fresh Start" for treatment.

15. As part of his recommendation, Ryan represented that the Fresh Start program has between a "70 to 80 percent success rate." Another Narconon representative, Josh Penn, joined the call and also began pressuring Christy to send Branden to Narconon.

16. The two representatives continued to represent to Christy that Narconon has a success rate of between 70 and 80 percent. Further, they represented that Narconon's sauna program had been scientifically proven as effective in reducing and eliminating drug cravings. They also claimed that Branden would receive extensive drug and addiction counseling from highly trained professionals.

17. They explained that the cost of the program was $33,000.00 to be paid in full upfront. When Christy expressed concern at the cost of the program, the representatives told her that she could not put a price on her son's life. Besides, they said, if Branden did not get into the Narconon program he may die and funerals are expensive, too.

18. The representatives directed Christy to the website for its facility in Warner Springs, California, www. sunshinesummitlodge.com. This website also represented that Narconon has a 76% success rate and explained that Narconon's sauna program eliminates drug cravings.

19. The website describes the founding of the Narconon program as follows: "The Narconon (meaning "no drugs") program was created by William Benitez in 1966. Mr. Benitez was inspired by humanitarian and author L. Ron Hubbard's book, The Fundamentals of Thought."

20. The actual title of the L. Ron Hubbard book that Fresh Start cites as the inspiration for its program is "Scientology: The Fundamentals of Thought."

21. The website also contains a section titled "Overview of the Program."  In this section, the website characterizes Narconon as a "secular program": "Although the Narconon Fresh Start program is secular (non-religious), program participants' religious beliefs are respected, and transportation is provided to their respective local churches on days of worship, when possible."

22. Still unsure, Christy told the representatives she needed to think it over. Then, a short while later the representatives called her again. They asked her to do them a favor and call three people whose family members received treatment at Narconon. They provided her phone numbers. After some coaxing, Christy agreed. Sure enough, she called one of the numbers and a woman claimed that Narconon was the best thing that Christy could do to help her son.

23. The representatives, Ryan and Josh Penn, called Christy yet again. They repeatedly stressed that it was urgent to get Branden to Narconon today. Christy finally relented and agreed to send Branden to Narconon.

24. Because Christy did not have the full $33,000.00 she begged family members to loan her funds to pay the program fee.

25. Christy and Branden met with a Fresh Start employee named Bernie. At that point Christy had only been able to raise $23,000.00 for Branden's treatment. Fresh Start instructed Christy to give Bernie $23,000 in actual, hard cash on meeting him to secure Branden's spot at the Fresh Start facility.

26. Fresh Start had Christy deposit the outstanding $10,000.00 in its bank account three days later.

27. Fresh Start sent Christy a contract to sign, a copy of which is attached as **Exhibit A**.

28. Branden then entered the Narconon program. Immediately, Bernie told Branden that he would be refused treatment unless he signed a statement that he would not sue Narconon for anything that happens in the facility. Narconon staff pressured Branden to sign this statement while he was going through withdrawal from heroin.

29. After considering, *inter alia*, that his Mother had already paid a supposedly non-refundable fee of $33,000.00 for the treatment, Branden finally gave in to staff members' pressure and signed the statement.

30. Fresh Start did not provide Branden or Christy with a copy of this statement.

31. The Narconon "Treatment" Program consists of two components: (1) course materials consisting of eight books by L. Ron Hubbard; and (2) a sauna and vitamin program known as the "New Life Detoxification Program."

32. Fresh Start had Branden study books written by or based on the works of L. Ron Hubbard, the founder of Scientology.

33. The books Fresh Start had Branden study taught Scientology doctrine and concepts.

34. Branden, like all patients at Fresh Start, was required to undergo Fresh Start's sauna program. Fresh Start calls this program the "New Life Detoxication" program.

5

35. The "New Life Detoxification" program is identical to the Scientology ritual known as "Purification Rundown," or the "Purif." The Purification Rundown is a required component of Scientology training and is part of Scientology's "Bridge to Total Freedom."

36. Fresh Start's rationale for the sauna program is that residue of many different types of drug remain the body's fatty tissue long after use. The drug residue is released from the fatty tissue from time-to-time into the bloodstream causing the individual to crave the drug, and, ultimately, relapse. Fresh Start asserts that the sauna program flushes these residual drug toxins out of the addict's system thereby reducing the cravings the residue causes.

37. Fresh Start requires students to spend six hours per day for five weeks in a sauna at temperatures between 160 and 180 degrees Fahrenheit.

38. There were no medical personnel overseeing Branden undergoing the sauna program.

39. Fresh Starts's claims about the benefits of its sauna program, *i.e.*, Scientology's Purification Rundown, are false and do not withstand scientific scrutiny.

40. Not only does Narconon's New Life Detoxification Program fail to live up to Fresh Start's claims about its benefits, the sauna program is dangerous. By having students ingest extreme doses of Niacin and other vitamins while sitting in extreme temperatures for hours, the sauna program unnecessarily exposes students to serious health risks including severe dehydration.

41. In a prior lawsuit, Dr. Louis A. Casal, an expert **retained by** Narconon International and Narconon of Northern Georgia in a wrongful death suit filed against those entities, testified at a deposition. Relevant portions of Dr. Casal's deposition testimony is attached hereto as **Exhibit B**. When asked under oath about the New Life Detoxification program, he testified that there is no scientific basis for the notion that sweating in a sauna detoxifies a person's body or treats addiction:

Q. Have you looked at the Narconon literature on what Narconon contends the benefits from the sauna are?

6

1     A. [Dr. Casal] Yes, I have.

2     Q.    And the sauna program, what Narconon contends is that in – it in fact detoxifies

3 your body. True?

4     A.    True.

5     Q.    But there's no scientific basis that you can point to to support that contention, is

6 there, sir?

7     A.    You're correct.

8     Q.    So when Narconon states that the sauna program detoxifies its students, you're not

9 aware, as a medical doctor, of any scientific basis for that contention?

10     A.    I agree.

11 Exhibit B, Deposition of Dr. Louis Casal, 136:21 – 137:9.

12 42.    Narconon claims a success rate of 76% for all Narconon centers, including Narconon

13 Fresh Start d/b/a Sunshine Summit Lodge. Narconon has published no studies or other verifiable

14 evidence to support their claimed success rates.

15 43.    Dr. Casal, the medical expert retained by Narconon International in another lawsuit,

16 testified at his deposition that he was not convinced Narconon's claimed success rate was true:

17     Q.    Okay. What are you relying on – well, let me ask you this; do you believe that 76

18 percent success ratio is accurate?

19     A. [Dr. Casal].  Mr. Harris, I'll be honest with you, that's a big number.

20     Q.    Yeah, it's – it's a real big number.

21     A.    It's a big number.

22     Q.    And it's completely inconsistent –

23     A.    I – I hope it's true, but, I mean, I would need some convincing.

24     …

25     Q.    Okay. Do you have any idea where Narconon is getting the numbers that it's using?

7

1  A. You know, in the interest of time – I just didn't have enough time to delve deeper

2 into those studies, Mr. Harris. And I – I would be happy to, but, no, I don't have a clear

3 understanding of where that 70 – 70-something number came from, no, sir.

4 Exhibit B, Deposition of Dr. Louis Casal, 124:21 – 125:5; 126:1 – 7.

5  44. Narconon is well aware that there is no support for Narconon's claimed success rate, but

6 nonetheless advertised a 76% success rate to Plaintiffs despite that awareness.

7  45. Narconon denies its program is intended to be the first step to converting people to

8 Scientology, despite the fact that their own documents indicate this is the case. For example, a

9 Narconon document titled the "Narconon Technical Line-Up" provides a flow chart of a patient's

10 experience into and through the Narconon program. The document shows that when a patient

11 finishes the Narconon program, the patient is to be "route[d] to the nearest Org for further services

12 if the individual so desires." "Org" is Scientology jargon for an individual church providing

13 services for the Church of Scientology. A copy of the "Narconon Technical Line-Up" is attached

14 hereto as **Exhibit C**.

15  46. Narconon considers its program to be the "Bridge to the Bridge." That is, Narconon

16 considers its program to be an initial step into getting on Scientology's "Bridge to Total

17 Freedom," the key spiritual journey that practitioners of the Scientology religion undertake. See,

18 e.g., "Narconon News, 1974, Volume 6, Issue 3: Narconon Is The Bridge to The Bridge," attached

19 hereto as **Exhibit D.**

20  47. During Branden's time at Narconon there were no on-site medical professionals, such as

21 doctors or nurses.

22  48. Most Fresh Start staff members were "graduates" of the Narconon program. Some of the

23 staff members had only recently completed the Narconon program as patients.

24

25

49. Despite Fresh Start's representations that Branden would receive counseling, at no point did staff ever speak to Branden about the specifics of his life or his drug use and its causes. In fact, no one at Fresh Start ever spoke to Branden about his substance abuse at all.

50. Branden received no education about substance abuse, its causes and effects, or methods to deal with his addiction. Instead, Branden received instruction only in Scientology.

51. Fresh Start repeatedly lied to Branden that his family had not called him, when in fact they had been calling Branden every day worried. Fresh Start staff repeatedly told Branden, in response to his questions about phone calls, that his family did not want to speak to him and did not care about him.

52. Finally, Branden saw that his Mother had, indeed, called him on a call-log sheet and caught a staff member in a lie. Branden then finally was able to speak with his family.

53. Before calling his family from Fresh Start, staff members warned Branden not to say anything about Scientology or L. Ron Hubbard. Further, staff members monitored his phone calls by sitting right next to him during his conversations.

54. Branden's aunt and uncle came to visit him during his stay at Fresh Start. Branden's aunt and uncle were horrified by the filthy housing conditions at Fresh Start.

55. Sales representatives told Christy that Branden would be receive treatment in a beautiful, state -of-the art facility. Instead, Branden and other patients were housed in a filthy, converted barn. Patients were underfed and required to share hygiene products like soap with one another.

56. During Branden's visit with his aunt and uncle on or about July 29, 2012, Branden asked his family members what they knew about the Scientology religion. They replied that they did not know much about it, but asked Branden why he was curious.

57. Branden explained that he believed he was being pressured to practice and believe in Scientology at Fresh Start. He explained to his aunt and uncle the bizarre Training Routines he

was being made to perform and what his so-called "treatment" entailed. He then pleaded for his aunt and uncle to take him out of the program.

58.  Branden's aunt and uncle removed him from Narconon. Branden did not want to return even to collect his clothes and other belongings at the facility.

## ALTER EGO LIABILITY

59.  Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

60.  Defendants Narconon Fresh Start and NI have all appearances of being a corporate sham illusion and mere instrumentalities of Defendant ABLE.

61.  ABLE heavily influences Narconon Fresh Start and NI and governs and controls nearly every aspect of their business activities.

62.  There is such unity of interest and ownership among Narconon Fresh Start, NI, and ABLE that they are inseparable from one another.

63.  The separate corporate existences of Narconon Fresh Start, NI, and ABLE is a design or scheme to perpetrate a fraud. The separate corporate existences of Narconon Fresh Start, NI, and ABLE is a scheme to fraudulently induce patients to enroll in one of their treatment facilities and pay substantial funds. Further, Defendants perpetrate this scheme to recruit for and promote the Scientology religion.

64.  It is interests of justice to disregard the corporate shield and treat Defendants Narconon Fresh Start, NI, and ABLE as identical. Accordingly, each cause of action listed below is made against all Defendants.

## FIRST CAUSE OF ACTION

## BREACH OF CONTRACT

65.  Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

66.     Defendants contracted with Christy to provide, in exchange for substantial consideration, secular, residential drug and alcohol treatment.

67.     Defendants breached this contract by, *inter alia*: (i) failing to provide services constituting drug and alcohol treatment; and (ii) providing Scientology in lieu of drug and alcohol treatment.

68.     Defendants' breaches have caused Plaintiffs to suffer damages in excess of $75,000.00. Such damages include the fact that Plaintiffs were required to pay an actual rehabilitation facility for services that Defendants promised to perform but did not deliver.

## SECOND CAUSE OF ACTION

## FRAUD AND/OR DECEIT

69.     Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

70.     The following is a non-exhaustive list of false representations Defendants knowingly made to the Plaintiffs: (i) that the Narconon Fresh Start program has a 76% success rate; (ii) that the Narconon program is secular and does not involve the study or practice of any religion; (iii) that Narconon is not in any way connected to the Church of Scientology; (iv) that Branden would receive counseling related to substance abuse; (v) that Narconon's sauna program, *i.e*, the Purification Rundown, is safe and has been scientifically proven as effective; (vi) that Branden would be under the supervision of counselors qualified to render drug and substance counseling.

71.     Fresh Start sales representatives Josh Penn and "Ryan" made these statements to Christy on or about June 6, 2012, to induce her to admit Branden to Narconon. Defendants also made these statements on its website, www.sunshinesummitlodge.com, and sales representatives directed Christy to the site. Staff made these same false representations to Branden and Christy throughout Branden's stay at Narconon.

72.     Had Christy known that any of the above representations Narconon made were false, she would not have admitted Branden to Narconon.

73. As a proximate result of Defendants' fraudulent conduct, Plaintiffs have suffered mental anguish, including intense paranoia, and pecuniary damages in excess of $75,000.00.

### THIRD CAUSE OF ACTION

### NEGLIGENCE

74. Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

75. Defendants owed Plaintiffs a duty to render substance abuse treatment to him in a manner that did not subject him to an unreasonable risk of harm. Defendants further had a duty of care to render reasonably safe and effective treatment to him.

76. Defendants breached these duties by: (i) instructing Branden to sit in a sauna for 6 hours per day for five weeks while ingesting extreme dosages of Niacin and other vitamins; (ii) failing to staff the Narconon treatment facility, and particularly the sauna, with any qualified medical personnel; (iii) failing to provide duly qualified counselors to administer treatment; and (iv) providing Scientology in lieu of substance abuse treatment.

77. As a proximate result of Defendants' breaches of the above duties, Plaintiffs have suffered mental anguish, including intense paranoia, and pecuniary injuries in excess of $75,000.00.

### FOURTH CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

78. Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

79. Defendants engaged in extreme and outrageous conduct with the intention of causing, or with reckless disregard of the probability of causing Plaintiffs severe or extreme emotional distress. Defendants' extreme and outrageous conduct consisted of, *inter alia*: (i) providing Scientology in lieu drug treatment or substance abuse counseling; (ii) preying on Plaintiffs' vulnerabilities and attempting to recruit Plaintiff Branden Chavez into Scientology under the guise

of providing drug treatment; and (iii) repeatedly lying to Branden Chavez that his family did not call him and did not care about him while he was in Defendants' care.

80. As a proximate result of Defendants' extreme and outrageous conduct, Plaintiffs have suffered severe and extreme emotional distress way beyond what any person in a civilized society should be expected to endure.

## FIFTH CAUSE OF ACTION

## NEGLIGENT MISREPRESENTATION (IN THE ALTERNATIVE)

81. Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

82. On or about June 5, 2012, Defendants made the following false representations of fact Plaintiff through their employees Josh Penn and "Ryan": (i) that the Narconon Fresh Start program has a 76% success rate; (ii) that the Narconon program is secular and does not involve the study or practice of any religion; (iii) that Narconon is not in any way connected to the Church of Scientology; (iv) that Branden would receive counseling related to substance abuse; (v) that Narconon's sauna program, *i.e*, the Purification Rundown, is safe and has been scientifically proven as effective; (vi) that Branden would be under the supervision of counselors qualified to render drug and substance counseling.

83. Defendants made these representations without using reasonable care.

84. Defendants knew that Christy Estrada would rely on these representations of fact.

85. Defendants made these statements to guide Christy Estrada in her business transaction with Defendants.

86. Christy Estrada relied on these false representations of fact to her detriment and has suffered damages in excess of $75,000.00.

## SIXTH CAUSE OF ACTION

## UNFAIR COMPETITION LAW CLAIMS BASED ON FRAUDULENT BUSINESS PRACTICES, Cal. Bus. & Prof. Code § 17200 *et seq*.

87. Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

88. Defendants, both on their website at www.sunshinesummitlodge.com, and through their sales representatives Josh Penn and "Ryan", advertised to Plaintiffs the following false statements of fact: (i) that the Fresh Start program has a 76% "success rate;" (ii) that Defendants' sauna program, the New Life Detoxification program flushes residual drug toxins from a patient's tissues and thereby reduces or eliminates drug cravings; (iii) that Fresh Start or the Narconon treatment program has the highest "success rate" in the drug and alcohol rehabilitation field; and (iv) that Fresh Start provides "cognitive behavior modification therapy" when, in fact, the courses and education Fresh Start offers is nothing more than entry-level Scientology.

89. NI and ABLE control and approve Fresh Start's advertising materials and scripts that salespersons such as Josh Penn and "Ryan" use when speaking to prospective patients.

90. Defendants' marketing materials for Narconon Fresh Start d/b/a Sunshine Summit Lodge do not disclose that all rehabilitation materials used at Fresh Start are based on the works of L. Ron Hubbard, the founder of Scientology. Further, the marketing materials for the New Life Detoxification Program do not disclose that it is based on the work of L. Ron Hubbard and is a Scientology ritual known as the "Purification Rundown."

91. Plaintiffs have been injured by relying on Defendants' false advertisements. Members of the public are likewise likely to be deceived by Defendants' false and misleading advertising

///

///

///

## SEVENTH CAUSE OF ACTION

## CIVIL RICO FOR MAIL AND WIRE FRAUD, 18 U.S.C. § 1964(c)

92.     Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

93.     Plaintiffs have been injured by Defendants' conduct of an enterprise through a pattern of racketeering activity.

94.     Defendants have engaged in a scheme to defraud Plaintiffs and countless others. In furtherance of that scheme, Defendants have committed countless acts of mail fraud and wire fraud under 18 U.S.C. § 1962 within the preceding ten years.

95.      Defendants perpetrate this scheme as follows: When prospective patients or their loved ones are referred to Narconon, they then speak to an intake specialist. The intake specialist – following a script – makes claims that Defendants know to be false and without scientific support such as the claims that Ryan and Josh made to Plaintiffs in this case on or about June 5, 2012. These false claims include: (i) that Narconon has a more than 76% success rate; (ii) that Narconon's sauna program reduces or eliminates drug cravings by eliminating toxins from an addict's fatty tissue; (iii) that patients at Narconon will receive extensive drug counseling; (iv) that the Narconon treatment program does not involve any religion;and (v) that patients at Fresh Start will be under the supervision of qualified counselors.

96.     Defendants also mail prospective clients such as Plaintiffs pamphlets making these same false claims to induce them to enter into the program. Defendants refer prospective patients to its website where these false claims are also made. NI and ABLE approve Narconon Fresh Start's marketing materials and scripts that contain these false claims.

97.     As was the case here, Defendants often recruit prospective clients from different states in which the facility is located. For that reason, Defendants' use of the phones, wires, mail, and internet is integral to their fraudulent scheme.

98.     While a patient is undergoing the program, Defendants prepare the patient to become a Narconon Fresh Start staff member following the patient's completion of the program. In doing so, the patient becomes a counselor for the next wave of incoming patients. This scheme allows Defendants to pay a patient-turned-counselor low wages and Defendants are spared the relatively higher cost of paying duly qualified addiction counselors.

99.     In addition, Defendants use their treatment program as a recruiting tool for the Church of Scientology, as evidenced by Defendants' own documents, attached hereto as Exhibits C and D.

100.    As a result of Defendants' racketeering activity, Plaintiffs have suffered pecuniary damages and other injuries.

## EIGHTH CAUSE OF ACTION

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

101.    Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

102.    The contract Plaintiff Christy Estrada entered into with Defendants for Defendants to provide treatment to Branden contained an implied covenant of good faith and fair dealing.

103.    Defendants acted unfaithfully to the purpose of the contract and Plaintiffs justified expectations by, *inter alia*: (1) having Branden unwittingly study and practice Scientology in lieu of engaging in drug treatment; and (2) attempting to have Branden surrender his legal rights in exchange for services for which Christy Estrada had already provided consideration; and (3) persuading Christy to send Branden to Fresh Start with promises that Fresh Start's sauna program would reduce or eliminate his drug cravings by flushing toxins and then asking Branden at Narconon to sign an acknowledgement that the sauna program is not a medical program and that it provides no physical gains.

104.     As a consequence of Defendants' breaches, Plaintiffs have suffered damages.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a jury trial on all issues triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

A. Judgment in favor of Plaintiffs and against Defendants for damages in such amounts as may be proven at trial;

B. Compensation for special, general, and treble damages;

C. Reasonable attorney's fees and costs of suit;

D. Interest at the statutory rate;

E. Punitive or exemplary damages against Defendant;

F. All further relief, both legal and equitable, that the Court deems just and proper.

DATED this May 5, 2014.

Respectfully submitted,

By: /s/ Ryan A. Hamilton

RYAN A. HAMILTON, ESQ.
CA BAR NO. 291349
HAMILTON LAW
5125 S. Durango Dr., Ste. C
Las Vegas, NV 89113
(702) 818-1818
(702) 974-1139
ryan@hamiltonlawlasvegas.com

*Attorney for Plaintiffs*